UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MARGARET WRIGHT,      )<br>                       )<br>     Plaintiff,         )<br>                       )<br>     v.                )<br>                       )<br>MARY ELLEN BULLOCK, JILL )<br>FOSTER, PETE WESSEL, THE )<br>CHILDREN'S HOME & AID SOCIETY, )<br>a not for profit corporation, CINDY )<br>PETTY, and  PETRONILO COSTA, )<br>M.D.,                  )<br>                       )<br>     Defendants.       ) | Case No. 09-1085 |

## ORDER

Before the Court are Defendant's, Children's Home and Aid Society ("CHASI"), Motion to Dismiss Counts VI and IX of Plaintiff's, Margaret Wright's ("Wright") Amended Complaint [#16] and Defendant's, Cindy Petty ("Petty"), Motion to Dismiss Counts V and VIII of Wright's Amended Complaint [#24].  For the reasons set forth below, the CHASI's Motion is GRANTED in part and DENIED in part and Petty's Motion is DENIED.

## BACKGROUND

Wright is a former employee of the Illinois Department of Children and Family Services ("DCFS"), who worked at DCFS from June 7, 1982, through September 30, 2007. (Am. Compl. ¶ 9).  She has brought suit against three DCFS officials (Mary Ellen Bullock, Jill Foster, and Pete Wessel), CHASI, and two of CHASI's employees (Petty and Petronilo Costa, M.D. ("Costa")).

Wright alleges that Defendants attempted to compel her to undergo a psychiatric evaluation (which she refused) and in doing so, invaded her privacy interests protected under the Fourth and Fourteenth Amendments, and interfered with her employment relationship with DCFS, which resulted in her loss of job.  As the three DCFS officials have filed Answers and Affirmative Defenses to the counts against them in the Amended Complaint and Wright has not perfected service on CHASI employee Costa, the Court will summarize the relevant facts and allegations from the Amended Complaint, as they pertain to CHASI and Petty.

Wright was employed as a Child Welfare Specialist II, where she provided various services to families and children including wards of DCFS who were assigned to her, and where she oversaw and monitored the services provided for these individuals by firms who had contracts with DCFS, like CHASI. (Am. Compl. ¶¶ 1, 2, 9, 10).  As part of her job, she handled the case of a DCFS ward named CPL, who at various times was placed in a residential facility operated by CHASI. (Am. Compl. ¶ 11, 16).

Wright periodically visited CPL at CHASI, conferred with CPL's care providers at CHASI, and monitored the care and services provided to CPL by CHASI. (Am. Compl. ¶ 18).  She states that prior to December of 2006, she maintained a good working relationship with the individuals at CHASI assigned to provide care and services to CPL. (Am. Compl. ¶ 19).  However, during the year 2006, Wright, as well as certain mental health professionals who provided services to DCFS and its wards, became concerned about potential problems which existed at CHASI, including concerns that CHASI staff members were either abusing or not properly caring for wards who were residents at its facility. (Am. Compl. ¶ 20).

Wright alleges that beginning on December 14, 2006, and continuing into the year 2007, individuals at CHASI involved in the care of CPL became less cooperative with Wright, and began interfering with her efforts in monitoring his care and treatment at CHASI. (Am. Compl. ¶ 21). Wright contends that on April 19, 2007, Wright attempted to contact CPL by telephone while she was a resident of CHASI, but that representatives of CHASI resisted her attempt to communicate with CPL. (Am. Compl. ¶ 24). At no time prior to that date had CHASI ever complained to Wright about her interactions with CPL or indicated that she was in any respect interfering with the care it was providing to CPL. *Id.* On April 20, 2007, a non-work day for Wright, Petty contacted Wright and indicated that CHASI was no longer willing to work with her. (Am. Compl. ¶ 25). Wright maintains that at no time during or prior to that conversation did any representative of CHASI ever inform her that she was engaging in conduct which was contrary to the best interests of CPL or interfering with the care and treatment CPL was receiving at CHASI. *Id.*

On April 23, 2007, a DCFS official informed Wright that she was to have no further contact with CPL until DCFS had conducted an unbiased review of CPL's case. (Am. Compl. ¶ 26). On April 25, 2007, a DCFS official informed Wright that the investigation concluded that there was no evidence that Wright had engaged in any improper conduct or behavior in her handling of CPL's case, but that there were concerns about the manner in which CHASI provided services for CPL. (Am. Compl. ¶ 27).

Wright alleges that Defendants Jill Foster and Mary Ellen Bullock met on or about May 3, 2007, with representatives of CHASI including Petty, whereby they discussed

Wright. (Am. Compl. ¶ 30). Immediately after that meeting, Defendant Mary Ellen Bullock directed Wright to have no further contact with anyone concerning CPL. *Id.* On May 7, 2007, Wright discovered that all files and related documents she had pertaining to CPL had been removed from her desk. (Am. Compl. ¶ 33). Later that day, Defendant Jill Foster informed her that CPL's case had been reassigned to another child welfare specialist. *Id.* Despite her request for a reason, neither the Defendant Jill Foster, nor Defendant Mary Ellen Bullock, would give her a reason for that decision. *Id.*

On June 4, 2007, DCFS sent Wright an order dated June 1, 2007, which: a) directed her to undergo an independent fitness for duty evaluation conducted by a psychiatrist selected by DCFS on June 19, 2007; b) indicated that the evaluation was arranged due to exhibited behavior on her part that put into question her personal safety and the safety of others in the workplace; c) indicated that the evaluation would be used to determine if she was able to perform the essential functions of her duties as a child welfare specialist; and d) indicated that if she refused to comply her refusal might result in her being considered unfit for duty and subjected to disciplinary action up to and including discharge. (Am. Compl. ¶ 35). Wright alleges that when she asked Defendant Mary Ellen Bullock why she was being required to submit to an independent fitness for duty evaluation, Defendant Mary Ellen Bullock told her that DCFS was not required to provide her with that information. (Am. Compl. ¶ 37). Wright maintains she did not attend the fitness for duty evaluation because of the intrusive nature of the fitness for duty evaluation, her concern that personal information she shared with the evaluator during the course of the evaluation would be exchanged with representatives of DCFS,

and because DCFS failed to set forth any reasonable justification for the evaluation. (Am. Comp. ¶ 43).

On July 17, 2007, DCFS convened a pre-disciplinary meeting where it accused Wright of insubordination for her failure to attend the July 16, 2007, fitness for duty evaluation. (Am. Compl. ¶ 44). Thereafter, Defendants Mary Ellen Bullock and Jill Foster placed Wright on desk duty, and Defendant Jill Foster transferred all of the active cases assigned to the Wright to other caseworkers. (Am. Compl. ¶ 45). On August 1, 2007, Defendant Jill Foster gave Wright her annual performance evaluation, where she criticized Wright's performance, despite never having previously shared any concerns or criticisms regarding how Wright was performing her duties for DCFS. (Am. Compl. ¶ 48). On August 2, 2007, Defendant Mary Ellen Bullock informed Wright that she was being assessed a fifteen day disciplinary suspension extending from August 6, 2007, through August 21, 2007. (Am. Compl. ¶ 49).

Wright was also informed that on August 22, 2007, she would be directed to attend another fitness for duty evaluation conducted by a psychiatrist selected by DCFS. *Id.* Wright proposed that a mutually agreeable mental health professional could conduct the fitness for duty evaluation, but Defendant Mary Ellen Bullock, on behalf of DCFS, rejected that proposal. (Am. Compl ¶ 50). On August 22, 2007, pursuant to the direction given to her by DCFS, Wright reported to the scheduled fitness for duty evaluation referred to above but declined to execute a consent enabling the psychiatrist to release to DCFS information gathered during his examination, and the fitness for duty evaluation was not conducted. (Am. Compl. ¶ 52).

On September 4, 2007, Defendant Mary Ellen Bullock informed Wright that she would be summoned to attend a pre-disciplinary meeting on September 5, 2007, because of her failure to cooperate with the fitness for duty evaluation, and that Wright was required to remain on desk duty and would not be allowed to perform any case work. (Am. Compl. ¶ 53). Wright stated that she resigned from DCFS, effective September 30, 2007, because she believed she would be terminated and because her working conditions were sufficiently intolerable. (Am. Compl. ¶¶ 58-59).

Wright named CHASI as Defendant in two counts: Count VI seeks to hold CHASI liable under § 1983 of the Civil Rights Act, for the alleged privacy violation protected under the Fourth Amendment, based on the conduct of Costa and Petty in recommending that Wright be required to submit to a fitness for duty evaluation, and Count IX seeks to hold CHASI liable for the state law claim of interference with employment, based on the conduct of Costa and Petty in interfering with Wright's employment with DCFS. Wright named Petty as Defendant in two counts, Count V, is under § 1983 of the Civil Rights Act for the alleged privacy violation protected under the Fourth Amendment, based on her conduct of recommending that Wright be required to submit to a fitness for duty evaluation, and Count VIII seeks to hold Petty liable for the state law claim of interference with her employment expectancy with DCFS by recommending that DCFS subject her to a fitness for duty evaluation.

CHASI and Petty seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing that (1) Wright fails to sufficiently allege that their conduct was under color of law; (2) the conduct alleged against them does not violate any right protected by the Fourth Amendment; (3) this Court should decline to exercise supplemental jurisdiction because

Wright alleges a novel question of state law; and (4) Illinois common law does not recognize the concept of constructive discharge. CHASI also argues that the doctrine of respondeat superior is inapplicable for § 1983 claims.

## DISCUSSION

A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41 (1957); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

**1.     Counts V and VI: 42 U.S.C. § 1983 claims**

42 U.S.C. § 1983 imposes civil liability upon a person who, under color of law, deprives another of rights secured by the Constitution. In order to prevail under this law, a plaintiff must establish (1) that some person has deprived her of a federal right, and (2) that the person who deprived her of that right acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 650 (1980). In order to be characterized as state action, "the deprivation [of constitutional rights] must be caused by the exercise of some

right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible ... [and] the party charged with the deprivation must be a person who may fairly be said to be a [S]tate actor." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937 (1982).  42 U.S.C. § 1983 protects citizens from conduct by the government, but not from conduct by private actors, no matter how egregious that conduct might be. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) (internal citations omitted).

Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints. *Morfin v. City of East Chicago*, 349 F.3d 989, 1002 (7th Cir. 2003) (internal citation omitted).  A court must be guided by two considerations in determining whether to hold a private party liable for an alleged constitutional violation: (1) "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority"; and (2) "whether the private party charged with the deprivation could be described in all fairness as a state actor." *Id.*  For example, private action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights; where the state compels the discriminatory action; when the state controls a nominally private entity; when it is entwined with its management or control; when the state delegates a public function to a private entity; or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself. *Hallinan*, 570 F.3d at 815-

816 (internal citations omitted).  To allege a conspiracy between a state and private actors, a plaintiff must allege that (1) a state official and private individual reached an understanding to deprive the plaintiff of her constitutional rights, and (2) those individual were "willful participant[s] in joint activity with the State or its agents." *Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir.2003) (internal citation omitted).

In addition to the facts above, Wright alleges the following in her Amended Complaint:

- CHASI was a social service agency which, among other things, provided inpatient services for children with behavioral or emotional disorders.  Pursuant to service agreements it had with DCFS, CHASI provided services for wards of DCFS, including a DCFS ward named CPL. (Am. Compl. ¶ 6).
- That at all times relevant to this proceeding the Defendant, Cindy Petty, was a managerial employee of CHASI. (Am. Compl. ¶ 7).
- Under the service agreements between DCFS and CHASI, CHASI received compensation from the DCFS in exchange for the services it provided DCFS ward, CPL. (Am. Compl. ¶ 16)
- That with respect to the care and treatment of CPL, DCFS and CHASI maintained an interconnected relationship from which each derived benefit.  DCFS received benefit from the services provided to it by CHASI with respect to the care and treatment of CPL.  Those services and treatment were provided under the supervision and oversight of DCFS. CHASI received financial benefit through the monies it received from DCFS for providing care and services to CPL as well as other wards of DCFS. (Am. Compl. ¶ 17).

In her Response to the Motions to Dismiss, Wright states that "CHASI is neither a municipality or unit of local government, but instead a private entity who (for purposes of § 1983 liability) is acting under color of law because of its joint conduct with public officials."  Taking all well-pleaded factual allegations as true, the Court finds that Wright seeks to impose § 1983 liability against CHASI and Petty based on the allegations that Petty (and Costa), while acting in the scope of their employment, "conspired" with DCFS

- 9 -

officials when they met with DCFS officials in order to have them force Wright to undergo a fitness for duty examination.

CHASI argues that even if CHASI was a state actor, this Court must still dismiss Wright's § 1983 claim against it because Wright improperly alleges liability based on respondeat superior. CHASI argues that *Monell* expressly rejects governmental liability based on an employee's misconduct under the doctrine of respondeat superior. *Monell v. Department of Social Serv.,* 436 U.S. 658, 690-91 (1978). Wright argues that *Monell* is inapplicable because CHASI is a private entity and *Monell* only applies to municipalities and units of local government.

It has long been established that there is no respondeat superior liability under § 1983, and although this principle typically surfaces in the context of municipal corporations, courts have applied the same principle to situations where the employer is an individual, and where the employer is a private corporation. *Rodriguez v. Plymouth Ambulance Service*, No. 06-4260. --- F.3d ----, 2009 WL 2498580, *3 (7th Cir. Aug. 18, 2009). Accordingly, as Wright does not allege any specific wrongdoing on the part of CHASI, and does not allege that a CHASI policy violated her constitutional rights, CHASI cannot be liable under § 1983 for the actions of its employees. The Court finds Wright's argument to the contrary is without merit. Therefore, the § 1983 claim against CHASI is DISMISSED.

Petty argues that even if Wright sufficiently alleges that she is a state actor, Wright still cannot maintain a § 1983 action against her because ordering an employee to undergo a psychological test as a condition for her continued employment is not a search under the Fourth Amendment and cites to *Greenawalt* to support her argument.

In *Greenawalt,* an employee of the Indiana Department of Corrections brought a § 1983 action against the Department and two of its officials after she was required to undergo a psychological test to keep her job as a research assistant. *Greenawalt v. Indiana Dept. of Corrections,* 397 F.3d 587, 588 (7th Cir. 2005). The district court dismissed the complaint on the pleadings, finding that the Department of Corrections could not be sued under § 1983 because it is not a "person" within the meaning of that statute, and that the suit against the individual defendants was barred by the doctrine of official immunity because the right that the plaintiff was seeking to enforce had not been clearly established in the case law when she brought the suit. *Id.* In affirming the district court, the Court of Appeals for the Seventh Circuit held that subjecting a public employee to a probing psychological examination is not a "search" under the Fourth Amendment. *Id.* at 590. The court reasoned that it did not think that "the Fourth Amendment should be interpreted to reach the putting of questions to a person, even when the questions are skillfully designed to elicit what most people would regard as highly personal private information." *Id.*

Wright argues that *Greenawalt* merely held that a psychological examination does not constitute a *search* for the purposes of the Fourth Amendment but that its holding did not reject the notion that a Fourteenth Amendment *privacy right* could be invaded when an employee was compelled as a condition of employment to submit to a psychological examination without adequate cause. *Greenawalt* went on to state:

> Perhaps it could even be argued that the administration by public officers of a particularly intrusive, and gratuitously humiliating, psychological test is a deprivation, without due process of law, of an interest in privacy that is an aspect of the liberty protected by the due process clauses of the Fifth and Fourteenth Amendments. There is a hint in *Whalen v. Roe,* 429 U.S. 589, 600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), that the "interest in

nondisclosure of private information" might indeed constitute a part of that liberty. *Id.* at 592.

The Court finds that *Greenawalt* does not foreclose the possibility that Wright could obtain relief against Petty based on the allegations that Petty invaded her privacy interests. The Court finds that Wright's allegations sufficiently allege a cause of action against Petty to survive this Motion to Dismiss. This matter will need to be revisited on summary judgment.

**2.      Counts VIII and IX: state law claims**

In Counts VIII and IX of her Amended Complaint, Wright alleges state law claims against both Petty and CHASI, alleging that they intentionally interfered with her expectancy of continued employment with DCFS. Both CHASI and Petty argue that Court should dismiss these claims, arguing that (1) this Court dismissed Wright's federal claims; and (2) Illinois does not recognize a valid common-law claim for constructive discharge. The Court finds these arguments are without merit.

As the Court has found that Wright can maintain a § 1983 action against Petty (and DCFS officials have filed Answers to Wright's Amended Complaint, including the federal claims) federal claims continue to remain in Wright's action. In addition, taking all well-pleaded factual allegations as true, the Court finds that Wright alleges a state claim of intentional interference with employment relationship, and not a claim of constructive discharge. The elements of intentional interference with employment relationship are: (1) reasonable expectation of continued employment; (2) knowledge of the business relationship by the interferer; (3) intentional interference; and (4) resultant damage. *Marczak v. Drexel Nat. Bank*, 186 Ill.App.3d 640, 645 (1st Dist. 1989). Wright alleges that CHASI and Petty and interfered with her employment relationship with

DCFS, by colluding with DCFS officials to force Wright to undergo a fitness for duty examination, which resulted in her resigning. Accordingly, the Court finds that Wright's allegations are sufficient.

## CONCLUSION

For the reasons set forth herein, the CHASI's Motion to Dismiss [#16] is GRANTED in PART and DENIED in PART and Petty's Motion to Dismiss [#24] is DENIED. This matter is referred to the Magistrate Judge for further proceedings.

ENTERED this 2nd day of September, 2009.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge