UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Margaret Wright,                            )
            Plaintiff        )
                             )
v.                                          )   Case No. 09-1085
                             )
Mary Ellen Bullock, et al,                  )
            Defendants       )

**ORDER**

Now before the Court are two motions to compel (#110 and 113) filed by Plaintiff. The motions are fully briefed, and I have heard argument from the parties. As stated herein, the motion as to CASA is DENIED, and ruling on the motion as to DCFS is DEFERRED.

**MOTION TO COMPEL AGAINST CASA**

The first motion (#110) is directed to non-party Court Appointed Special Advocates of Peoria County ("CASA"), seeking enforcement of a subpoena sent to CASA Executive Director Pam Perrilles. The subpoena sought production of certain documents, including copies of reports and documents submitted to the Circuit Court of Peoria County in a particular juvenile court proceeding. The subpoena included a copy of the Protective Order that governs production of documents in this case and a cover letter indicating that the records would be handled in accordance with that Protective Order.

Perrilles responded with a letter in which she stated that the documents sought were confidential and protected by the Illinois Juvenile Courts Act, which generally prohibits access to, inspection of, and copying of juvenile court records.

Plaintiff then filed this motion, asserting that the Juvenile Court Act applies only to the

1

documents that are contained in the court file and not to copies of those documents in the possession of third parties.

The Juvenile Court Act of 1987, 705 ILCS 405/1-8, restricts inspection and copying of "juvenile court records relating to a minor who is the subject of a proceeding under this Act" to specified individuals and agencies, none of which is the attorney in a civil matter not before the juvenile court. The Act specifically provides that juvenile court records are not available to the general public absent a court order by the court presiding over the juvenile matter.

According to Plaintiff, however, copies of documents in the court file do not become privileged under the Act simply because they were filed in the court's file. These records, asserts Plaintiff, "have an independent life from the copy presented to Juvenile Court and made part of its court records."

No one disputes CASA's description of its mission or function. It is a non-profit volunteer organization that advocates for the best interests of abused and neglected children in the court system. A CASA volunteer is appointed by the judge in the juvenile court proceedings, and the volunteer serves as an officer of the Court. He or she gathers information for the court and makes recommendations about what the child needs to be safe. This information and recommendation are set forth in reports that the volunteer files with the court.

The documents sought are not just any random documents, nor are they documents prepared by some third party with no connection at all to the court. They are prepared by officers of the court for the knowledge of the court and the use of the court in the juvenile proceeding before it. They do not have a life outside of the court file, at least not in the way that Plaintiff asserts that they do. I find that these documents are protected by the Juvenile Court Act.

Plaintiff next asserts that this state privilege is not cognizable in federal proceedings. Fed.R.Evid. 501 provides that privileges are "governed by the principles of the common law as they may have been interpreted by the courts of the United States in the light of reason and experience."

In Memorial Hospital for McHenry County v. The Honorable Milton I. Shadur, 664 F.2d 1058 (7th cir. 1981), the Court considered whether to recognize a privilege that arose under the Illinois Medical Studies Act. Noting that federal courts should neither automatically reject nor automatically apply a state privilege, the Court discussed various considerations that should be taken into account in deciding whether to honor the privilege. "A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." Id. at 1061. "Where a State holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule." Id.

The Court applied three principles that should govern the decision. First, evidentiary privileges are to be narrowly construed. Second, it is important to take into account "the particular factual circumstances of the case in which the issue arises." Finally, the need for the truth should be weighed against the importance of the relationship or policy furthered by the privilege and the likelihood that recognition of the privilege will in fact protect that relationship or policy in the setting of the case. Id. at 1061-62.

In this case, I find that the importance of the policy underlying the state privilege is such that it outweighs any need for these documents in the search for the truth. The privacy of minors in the court system is an issue that the legislature obviously considers essential. Juvenile proceedings are subject to all sorts of protections that do not exist in other proceedings. Special rules of proof, right

to counsel, use of a jury and the like protect the interests of the minors. This policy recognizes that the immaturity of minors creates situations for protection that do not present themselves where the party is an adult. The Juvenile Court Act reflects the State's assumption of its role as protector of minors in the system. Protection of their privacy is part of that role. The Juvenile Court Act is carefully and thoroughly drawn, specifying who can see these records and under what circumstances. Allowing the Plaintiff in this case to do an end run around the statutory protections by obtaining the documents by subpoena to the court officer who prepared them would be to eviscerate the policy.

Recognizing this state privilege does no damage to any federal substantive or procedural policy. Matters involving juveniles are left largely to the states for legislation and adjudication. While a presumption may exist against privileges that keep out evidence in the search for truth, in areas such as this, the scope of a privilege as carved out by the state should be accorded the highest respect by the federal court.

Moreover, I conclude that recognizing the privilege in this situation protects that policy. This is not a case in which the records sought are those of the Plaintiff; the records belong to a non-party, so his privacy is an even higher consideration. Plaintiff concedes that no effort has been made to obtain an order from the juvenile court, which is the procedure set forth in the Act to obtain court records.

The records sought by the subpoena in question are protected under the Juvenile Court Act, and the privilege provided by that Act applies in this federal proceeding. The motion to compel (#110) is **DENIED**.

**MOTION TO COMPEL AGAINST DCFS**

Plaintiff has also filed a motion to compel against DCFS. Plaintiff states that during the

course of discovery a DCFS document "Permanency review Hearing on behalf of" a non party minor (the name was redacted) was disclosed. This document is referred to in Plaintiff's motion as Exhibit 87, and the Court will also use that title for the document.

On page 4 of Exhibit 87, the following paragraph appears:

Counseling/Therapy:, CPL continues to participate in weekly individual and group therapy at Rice. She receives individual therapy from Ms. Nora Mariduena. Dr. Augustine also meets weekly with CPL. Please refer to the attached report from Rice for more details on this subject.

After receiving that document, Plaintiff sent a request for documents to DCFS, asking for:

21. All communications exchanged between Elma Augustine and any representative of DCFS from January 1, 2006 to December 31, 2007 relating to either a) CPL; b) the Plaintiff; or c) CHASI.
22 All reports or other documents filed by any representative of DCFS or person or firm providing services for DCFS with the Circuit Court of Peoria County, Illinois in any case involving CPL between January 1, 2006 and December 31, 2007.

DCFS responded as follows:

21. Defendant is unaware of the existence of any documents responsive to this request. Any communications responsive to this request, if in possession of Defendant Wessel or DCFS, are attached hereto in [various email attachments].
22. Documents and communications responsive to this request are attached hereto in CPL.

Plaintiff asserts in this motion to compel that the "report" referenced in Exhibit 87 was not and has not been produced. Hence, the instant motion to compel production of that report. DCFS responds that, in the Permanency Review Report (Exhibit 87) that was filed with the Juvenile Court in the CPL proceeding, there was no attachment. The Juvenile Court Judge who issued the Order following the hearing listed the items he had considered; the list did not include the "report" that is referenced in Exhibit 87.

On May 29, 2007, several days after the hearing in the CPL juvenile matter, a 6 page Rice Child & Family Individual Treatment Plan" was filed in the Juvenile Court proceeding. This report

5

describes itself as "developed by Dr. Mariduena and with Dr. Augustine's recommendations for therapy and therapeutic milieu at RCFC." This report concerns counseling and therapy received by CPL from Dr. Mariduena and Dr. Augustine and detailed the mental health treatment goals that were set for CPL while she was at Rice.

It is the position of DCFS that the report that was filed after the hearing is the same report that was referred to in Exhibit 87. This report has been produced in discovery by DCFS and by another party. DCFS concludes that it does not have in its possession or control any other responsive document.

At the hearing, Plaintiff mentioned for the first time that there exists Exhibit 135 which he asserts is a one page "Recommendation" that is different than anything that appears in the report that has been produced. If this is true, and if this one page document is indeed a DCFS document and if it is within the pertinent time frame, then it is some indication that there may well be another report that DCFS has not located or produced. Because there is no argument in the pending motion or the response thereto about that particular issue, the Court is reluctant to rule without further information from the parties.

Accordingly, DCFS is directed to do the following things <u>on or before October 7, 2011</u>. First, it shall make every reasonable effort to ascertain the context (i.e. was it part of a report? part of doctor's records?) of Exhibit 135. Second, once that context is determined, it shall determine if the documentary context is discoverable under CPL's consent, the Protective Order and the facts of this case. If it is, DCFS shall supplement its response to Plaintiff's request for documents and shall produce that documentary context to the Plaintiff. If there is no such context or if context exists that is not discoverable for some reason, DCFS shall supplement its response to the request for documents stating the basis for such conclusion. In either event, DCFS shall file a supplement to its

response stating that it has been produced. If Plaintiff wishes to file a reply to the supplement (limited to 5 pages or less), it shall be filed no later than Oct. 14, 2011. Ruling on the motion is **DEFERRED** until supplementation is complete.

Nothing in this order shall be construed as extending the deadline for filing dispositive motions or any other deadline in this case.

ENTERED ON September 29, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE